IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

QUINCY CARTER,

    Plaintiff,

v().                                                               CASE NO. 1:15-cv-237-MP-GRJ

OFFICER GRADY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is presently before the Court on Defendant's Motion for Final Summary Judgment. (ECF No. 18.) Upon the filing of Defendant's motion, the Court ordered Plaintiff to file a response on or before October 17, 2016. (ECF No. 20.) When Plaintiff failed to do so, the Court ordered Plaintiff to show cause on or before November 23, 2016, as to why the motion for summary judgment should not be granted. (ECF No. 21.) Despite these two orders from the Court, as of the date of this Report and Recommendation, Plaintiff has failed to file a response. This matter is, therefore, ripe for review. For the reasons discussed below, the undersigned recommends that Defendant's motion for summary judgment be granted.

## I.  BACKGROUND

Plaintiff alleges that on May 1, 2015, while he was incarcerated at Dixie County Jail,[1] he and another inmate were taken from "max" to Cell 160 to wait to meet with their public defender.  He claims that while waiting, he and Jeremy Golonka were sprayed with chemical agents by Defendant Officer Grady "for no reason" while in leg shackles, belly chains, and handcuffs and while confined behind a door. Plaintiff contends that he was not a threat and that the use of chemical agents was unnecessary and an excessive use of force. Accordingly, Plaintiff argues that Defendant violated his Eighth Amendment rights. He requests punitive damages, compensatory damages, and an injunction against Defendant.  (ECF No. 1 at 3.)

Defendant filed a motion to dismiss Plaintiff's Complaint for failure to state a claim on December 22, 2015. (ECF No. 9.) The Court granted Defendant's motion in part, dismissing Plaintiff's request for compensatory and punitive damages against Defendant because he failed to allege physical injury. (ECF Nos. 11, 13.) The Court informed Plaintiff, however,

---

[1] Plaintiff was released from Dixie County Jail on July 28, 2015. (ECF No. 19-3.)

that he could still recover nominal damages upon demonstrating a violation of his constitutional rights. (ECF No. 11 at 5.) Thus, the Court advised Plaintiff that he could amend his Complaint with either the consent of Defendant or leave of the Court. (*Id.*) Plaintiff also had a claim for injunctive relief, which Defendant did not address in his motion to dismiss. (*Id.*)

Defendant then filed a motion for summary judgment, arguing three grounds: (1) Plaintiff's release from jail moots his claim for injunctive relief, (2) Plaintiff's complaint cannot be construed as requesting nominal damages because he specifically requests only compensatory and punitive damages, and (3) even if the Court liberally construes Plaintiff's complaint as alleging nominal damages, Plaintiff has not suffered a constitutional violation. (ECF No. 18.)

In support of Defendant's motion, he submitted the Dixie County Sheriff's Office Booking Summary, ECF No. 19-1; a transcript of Plaintiff's deposition on July 6, 2016, ECF No. 19-2 ("Pl. Depo."); and the Dixie County Sheriff's Office Release Report, ECF No. 19-3. With the transcript of the deposition, Defendant also submitted the exhibits used during the deposition, including an Inmate Grievance Form, ECF No. 19-2 at 75 ("Grievance Form"); Defendant's Incident Report, ECF No. 19-2 at 76

("Incident Report"); a Dixie County Jail Use of Force Work Sheet, ECF No. 19-2 at 77–78 ("Use of Force"); Dixie County Jail Progress Notes, ECF No. 19-2 at 79 ("Progress Notes"); Dixie County Jail Disciplinary Report, ECF No. 19-2 at 80 ("DR"); a list of inmate rights at a disciplinary hearing, ECF No. 19-2 at 81; Disciplinary Report Investigation Worksheet, ECF No. 19-2 at 82 ("Investigation Worksheet"); Golonka's Witness Statement, ECF No. 19-2 at 83 ("Golonka Statement"); Findings of the Committee, ECF No. 19-2 at 84 ("Findings"); and a second Inmate Grievance Form, ECF No. 19-2 at 85.

Plaintiff, however, failed to respond and therefore has not submitted any evidence against Defendant's motion for summary judgment. Pursuant to Fed. R. Civ. P. 56(e),

> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>     (1) give an opportunity to properly support or address the fact;
>     (2) consider the fact undisputed for purposes of the motion;
>     (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
>     (4) issue any other appropriate order.

The Court may, however, consider Plaintiff's Complaint when ruling on Defendant's motion for summary judgment. 28 U.S.C. § 1746 provides that

> [w]herever, under any . . . rule, . . . any matter is required or permitted to be supported, evidence, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidence, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated . . . .

Plaintiff's Complaint is signed under penalty of perjury. (ECF No. 1.) Thus, the Court can properly treat Plaintiff's Complaint like a sworn affidavit. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."). The Court may, therefore, consider Plaintiff's sworn allegations in his Complaint in ruling on the motion for summary judgment in addition to the other filings before the Court.

## II. EVIDENCE

On February 21, 2015, Plaintiff was booked at Dixie County Jail.

(ECF No. 19-1.) Then, on May 1, 2015, at around 8 or 9 a.m., Plaintiff and another inmate, Jeremy Golonka, were taken from "Max" to meet with their public defender. (ECF No. 1 at 2; Pl. Depo. at 18.) To transport Plaintiff and Golonka, they were placed in belly chains and shackles. (ECF No. 1 at 2; Pl. Depo. at 18.) Officer Owens and Defendant then took them to holding cell 160 to wait to see their attorney. (Pl. Depo. at 18.)

Once in the holding cell, Plaintiff and Golonka began talking and laughing. (Pl. Depo. at 19, 38.) Then, Defendant came by to tell them to be quiet. (*Id.* at 24.) Plaintiff stated that Defendant must have heard "that we got a little loud." (*Id.* at 38.) Plaintiff said they toned it down after that. (*Id.*) Defendant came by a second time to tell them to be quiet. (*Id.* at 24.) Plaintiff said they cooperated by lowering their voices, although they were already talking low. (*Id.*)

Plaintiff then attempted to get an officer's attention so he could receive some toilet paper to use in the bathroom. (*Id.* at 19.) Plaintiff said that he asked normally, but that this was "when [Defendant] thought [Plaintiff] was screaming and cursing out the door." (*Id.* at 38.) Plaintiff eventually got an officer's attention and was given toiler paper. (*Id.* at 19.) Defendant came by a third time about five minutes later. (*Id.* at 25, 42.)

According to Plaintiff, while he was still sitting on the toilet and talking to Golonka, Defendant sprayed him with chemical agents without saying anything first. (*Id.* at 21.) Plaintiff was able to turn away toward the wall, so the spray landed on the back of his neck, his side, and the toilet paper. (*Id.* at 32, 38.)

After Plaintiff was sprayed, he took a shower and was given new clothes. (Pl. Depo. at 22.) He then saw a nurse, and his blood pressure was high. (*Id.* at 40.) During his medical visit Plaintiff was laughing and talking. (*Id.* at 50; Progress Notes.) Afterward, he was able to meet with his attorney. (*Id.* at 22.) Plaintiff said he told his attorney what happened, but she said she could not do anything about it. (*Id.* at 40–41.)

According to Plaintiff, at the time he was sprayed he was not a threat and was doing everything he was asked to do. (*Id.*) He claims he was unnecessarily sprayed and that it was an excessive use of force. (ECF No. 1 at 2; Grievance Form.) When Plaintiff later asked Defendant why he sprayed Plaintiff, Defendant allegedly stated "you put me on the spot." (*Id.* at 30.) Plaintiff also stated, however, "I guess he figured I was screaming, yelling, and cursing, which I never did." (*Id.*) Plaintiff said Defendant wanted it to be quiet up front, but that Plaintiff was not the reason it was

loud. (*Id.*) Plaintiff believed he was sprayed because the officers could not catch Plaintiff outside once when he was running. (*Id.* at 29.) Golonka's only statement regarding the incident stated that he "was sprayed while in restraints." (Golonka Statement.)

Defendant, however, said that he sprayed Plaintiff with chemical agents because he was yelling, screaming, and cursing out the door. (Pl. Depo. at 20, 52; Incident Report; DR.) Defendant wrote in his disciplinary report after the incident that he ordered Plaintiff to stop screaming and yelling. (Pl. Depo. at 53; DR.) Defendant also wrote that he warned Plaintiff that if he did not cease his disruptive behavior, Defendant would use chemical agents on Plaintiff. (Incident Report.) Because Plaintiff continued yelling and cursing, Defendant administered three one-second bursts of the chemical agent into Cell 160. (Incident Report; Use of Force.)

After the filing of the disciplinary report, Plaintiff was placed in "the box" while he waited for his hearing. (Pl. Depo. at 57.) Plaintiff was found guilty at the hearing. (Pl. Depo. at 64; Findings.) He received thirty days in confinement. (Findings.) Plaintiff said he knew he was not going to win at his hearing, and he did not appeal the decision. (Pl. Depo. at 58.) Instead, Plaintiff wrote grievances following this incident. (Pl. Depo. at 22, 42, 58;

Inmate Grievance.) Plaintiff said that he received responses to some of his grievances but not to all of them. (Pl. Depo. at 42, 58.)

Plaintiff was released from Dixie County Jail on July 28, 2015. (ECF No. 19-3.) Following his release, he filed the instant Complaint. (ECF No. 1.)

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she

must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage." *Beard v. Banks,* 548 U.S. 521, 530 (2006).  Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV. DISCUSSION

**A. Plaintiff's claim for injunctive relief is moot due to his release from Dixie County Jail.**

Defendant argues that because Plaintiff is no longer incarcerated at the Dixie County Jail, where Defendant is employed, an injunction against him is now moot. (ECF No. 18 at 10–11.) The transfer of a prisoner moots a claim for injunctive relief. *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011). Plaintiff was transferred from Dixie County Jail in July 2015. (Release Report.)  Accordingly, Plaintiff's claim for injunctive relief is now moot.

**B.  Even if Plaintiff's Complaint is liberally construed to state a claim for nominal damages, Plaintiff has failed to show a violation of his Eighth Amendment rights, and thus nominal damages are not warranted in this case.**

In Plaintiff's Complaint, he requested punitive damages, compensatory damages, and an injunction against Defendant. (ECF No. 1 at 2.) Although the Court dismissed Plaintiff's claims for punitive and compensatory damages the Court advised Plaintiff that he was still entitled to recover nominal damages upon demonstrating a violation of his constitutional rights. (ECF No. 11 at 5.) Further, the Court advised Plaintiff

that pursuant to Fed. R. Civ. P. 15(a)(2), he was permitted to amend his Complaint with either consent of Defendant or leave of this Court. (*Id.*)

Plaintiff, however, never amended his Complaint to allege nominal damages. Although courts have determined that a *pro se* prisoner's complaint "cannot be liberally construed as requesting nominal damages, because he specifically requests only . . . compensatory and/or punitive damages," *Qualls v. Santa Rosa County Jail*, No. 3:10cv54, 2010 WL 785646, at *3 n.1 (N.D. Fla. 2010), *citing Sears v. Rabion*, No. 03-13558, 97 Fed. Appx. 906 (Table) (11th Cir. Feb. 18, 2004), determining whether Plaintiff's Complaint could be construed to request nominal damages is unnecessary. As the Court previously advised Plaintiff, nominal damages may only be recovered if he shows a violation of his constitutional rights. (ECF No. 11 at 5.) Here, Plaintiff has failed to demonstrate any such violation, so he cannot recover nominal damages—even if he had alleged them in his Complaint.

In Plaintiff's Complaint, he stated that Defendant violated his Eighth Amendment rights because Defendant used excessive force when he sprayed Plaintiff with chemical agents. (ECF No. 1 at 2.) The Eighth Amendment requires that no cruel and unusual punishments be inflicted.

U.S. Const. Amend. VIII. In a prison setting, force is deemed legitimate under the Eighth Amendment as long as it is used "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986). A variety of factors are considered in determining whether the force was applied maliciously or sadistically, including the extent of injury, the need for force, the relationship between that need and the amount of force used, the threat reasonably perceived by the prison officials applying it, and any efforts made to temper the severity of the force used. *Hudson v. McMillian,* 503 U.S. 1 (1992). A *de minimis* use of force, as evidenced by *no* injury, typically cannot support a claim of excessive use of force. *Id.* at 7–8.

The use of chemical agents on disruptive prisoners is not *per se* unconstitutional. *Danley v. Allen,* 540 F.3d 1298, 1307 (11th Cir. 2008), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010) ("Pepper spray is an accepted non-lethal means of controlling unruly inmates[,]. . .[and a] short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders"); *Soto v. Dickey,* 744 F. 2d 1260, 1270 (7th Cir. 1984) ("The Supreme Court has never held, nor have we or any other court of appeals, so far as we

can determine, that the use of tear gas or a chemical agent is a per se violation of the Eighth Amendment . . ."); *Spain v. Procunier,* 600 F.2d 189, 196 (9th Cir. 1979) ("[U]se of nondangerous quantities of [tear gas] in order to prevent a perceived future danger does not violate 'evolving standards of decency' or constitute an 'unnecessary and wanton infliction of pain.'").

When chemical agents are used unnecessarily, however, without penological justification or for the purpose of punishing or harming an inmate, the use is unconstitutional.  See *Danley,* 540 F.3d at 1311 (holding that prolonged exposure to pepper spray due to a failure to properly decontaminate an inmate may form the basis of an Eighth Amendment claim); *Iko v. Shreve,* 535 F.3d 225, 239 (4th Cir. 2008) (use of additional bursts of pepper spray after inmate attempted to comply sufficiently alleged Eighth Amendment claim).

The first issue with regard to Plaintiff's Eighth Amendment claim centers around whether there was a penological justification for the use of chemical agents on Plaintiff.  Plaintiff claims that Defendant sprayed him unnecessarily as he was not causing any kind of disturbance; instead, he was only talking quietly. Defendant counters that Plaintiff was yelling and cursing, despite multiple requests for him to stop. Defendant stated that he

warned Plaintiff that chemical agents would be used if Plaintiff did not cease his disruptive behavior, and Defendant only administered the chemical agents after Plaintiff failed to obey orders multiple times.

The Court has reviewed all of the summary judgment evidence submitted by the parties and determines that there is no genuine dispute as to whether a penological reason existed for the use of force.  Every account of Defendant's story states that Plaintiff was disruptive and disobeyed orders to be quiet. (DR; Use of Force; Incident Report.) Plaintiff does not dispute that Defendant told him multiple times to be quiet, but Plaintiff states that he was not talking loudly. (*See* ECF No. 1 at 2; Pl. Depo.; Grievance Form.)

Defendant wrote multiple signed statements following the incident, all of which state that Plaintiff was disruptive. Defendant drafted an incident report and a disciplinary report stating that Plaintiff was engaging in disruptive behavior, and the disciplinary report was approved by his supervisor.  (Incident Report; DR.)  Plaintiff was then found guilty at his disciplinary hearing following the incident. (Findings.) A Use of Force Worksheet was also completed. (Use of Force.) This form states that Plaintiff failed to make a statement concerning the incident. (*Id.*) Upon

review of the incident, the use of force was approved. (*Id.*)

Plaintiff's evidence, however, is lacking in support.  The only sworn evidence Plaintiff submits is his Complaint in which he says only that he was not causing a disturbance. Notably, Plaintiff has not submitted any sworn evidence refuting Defendants' statements that he was yelling and cursing. In fact, his named witness Golonka's only statement about the incident was that they were sprayed while in restraints—failing to mention anything about being sprayed unnecessarily, without warning, or while they were talking quietly. (Golonka Statement.)

A permissible use of force by prison guards is to restore order within a prison.  *See Whitley*, 475 U.S. at 320–21; *Fischer v. Ellegood*, 238 F. App'x 428, 431 (11th Cir. 2007).  Accordingly, the Court finds based on the evidence submitted that the use of force was to stop Plaintiff's disruptive behavior.

The next issue is whether the force used was excessive in relation to the need for force.  The Eleventh Circuit addressed this issue in *Danley*, finding that a "short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey a jailer's orders." *Danley*, 540 F.3d at 1307.  The exact same situation presents itself here—the burst

of pepper spray was intended to control Plaintiff, who was exhibiting disruptive behavior despite multiple orders to be quiet.  Thus, there is no violation as to the amount of force used in relation to the need for force.

Finally, the Court must consider whether Plaintiff's exposure to the pepper spray caused injury that violates the Eighth Amendment.  Plaintiff stated that after he was sprayed, he took a shower, received clean clothes, and went to medical. (Pl. Depo.; Incident Report.)  According to the nurse's report, Plaintiff had high blood pressure but no injuries were reported. (Progress Report.) He was even laughing and talking at this time. (*Id.*) Further, the Court previously dismissed some of Plaintiff's claims because he failed to show injury. (ECF Nos. 11 at 5; 13.) Because Plaintiff never amended his Complaint, the conclusion that Plaintiff has failed to allege any injury remains. Thus, there is no genuine dispute that there was not any alleged injury from the use of force, and if there was any injury, it was at most *de minimis* and thus does not support a violation of the Eighth Amendment.

Accordingly, the Court concludes that there is no genuine dispute of material fact that precludes the entry of summary judgment in favor of Defendant because Plaintiff has failed to prove any Eighth Amendment

violation.

## C. Defendant is entitled to qualified immunity.

Defendant also contends that he is protected from suit by qualified immunity because Plaintiff failed to prove any constitutional violation. (ECF No. 18 at 22.) As to qualified immunity, the Court has determined that Plaintiff has not shown a constitutional violation, and thus Defendant is entitled to qualified immunity.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

## V.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendant's Motion for Final Summary Judgment, ECF No. 18, should be **GRANTED** and judgment should be entered in favor of Defendant.

**IN CHAMBERS** this 1st  day of December 2016.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.